Warren
*v.*
Stearns.

---

# MICHAEL LAZARUS *versus* THE COMMONWEALTH INSURANCE COMPANY.

A policy of insurance on a steamboat valued at double the sum insured, was procured by an agent of the owner, the plaintiff, payable in case of loss to the agent, who, at the time of procuring the insurance and at the time when the vessel was lost, was a creditor of the plaintiff, and in whose hands the policy remained until after the loss. The debt to the agent was subsequently paid. It was stipulated in the policy, that it should " be void in case of its being assigned, transferred, or pledged, without the previous consent in writing of the assurers." Before the loss the plaintiff made a general assignment of all his property, including the steamboat and other vessels, and, among various classes of choses in action, "all policies of insurance," in trust for the payment of his creditors, some in full and others in full or *pro ratâ*, the surplus, if any, to be applied to the use of the plaintiff, provided that the second class of creditors accepting of the assignment, should within a time limited give him a release of their respective claims, and if any one of such creditors should refuse to do so, then the share to which he would have been entitled under the assignment, was to be divided ratably among those who should give such a release; and nearly all the creditors gave a release accordingly. The assurers never assented to the assignment. After the payment in full to the creditors who had given a release, there was a surplus of property, without resorting to the sum claimed on the policy in question. It was *held*, that this policy was not included in the assignment, but only such policies as the plaintiff could legally and effectually assign.

*Held* also, that after the assignment the plaintiff had an insurable interest in the steamboat.

*Held* also, that the plaintiff's insurable interest was the whole value of the steamboat,

and not such a proportion only of that value as the surplus of the assigned property, after paying the debts, bore to the whole value of the assigned property.

An auditor appointed to audit the accounts between the plaintiff and the assignee, made up his report, founded in part upon an account current laid before him, and delivered it to the parties. Happening afterwards to go to a distant city, in which the assignee resided, he examined for his own satisfaction the assignee's books, to ascertain whether the account current was correct. Subsequently, upon the request of the defendants, he reaudited the accounts, both parties being heard before him, and made a second report, without having mentioned to the defendants his examination of the assignee's books, and which books were not produced upon such hearing. It was *held,* that the auditor's examination of the assignee's books and his omission to communicate the fact, constituted no valid objection to his second report.

*Held* also, that the defendants having appeared and been heard before the auditor, on the reaudit, it was too late for them to object that he was under a bias in consequence of his having made the previous report.

The report of an auditor appointed by the court, is *primâ facie* evidence of the facts or inferences therein stated, as derived from the evidence in the case, and not merely of the result of the accounts, if such facts were otherwise proved to exist.

An agreement was made between the assignee and some of the creditors, in which, after reciting that the creditors, parties to the assignment, had agreed to give the plaintiff a discharge upon receiving one fourth of their respective claims in cash and " the whole of the remaining assets as set forth under the agreement," it is stipulated that the assignee shall collect the remaining assets and divide the same *pro ratâ* among the creditors. It was *held,* that this agreement did not divest the plaintiff of his insurable interest in the steamboat, because he was not a party to it, and because it did not mean, that a surplus after payment of the creditors in full, should be divided among the creditors.

Assumpsit on a policy of insurance, dated October 21st, 1824, by which the defendants caused Smith & Stewardson of Philadelphia, for account of the plaintiff, who lived in Charleston, South Carolina, to be assured $ 11,000 on the steamboat Henry Schultz, valued at $ 22,000, for ten months, commencing on the 9th of the same October. The premium note was signed by Smith & Stewardson, and the policy was made payable to them in case of loss. The policy contained this clause : "It is also agreed, that this policy shall be void in case of its being assigned, transferred, or pledged, without the previous consent in writing of the assurers."

The case was before the Court in 1827, when a new trial was granted ; (see 5 Pick. 76 ;) and it was accordingly tried a second time, in 1836, before *Morton* J.

It appeared that the steamboat was lost on the 22d of April, 1825, by a peril insured against, and that a salvage had been received by the plaintiff ; and he claimed the balance after deducting this from the total loss.

On the 23d of December, 1824, the plaintiff executed an indenture, whereby he assigns to Timothy Street, of Charleston, all his interest in certain vessels specified, certain slaves, all goods, wares and merchandise, stock in trade, property and effects of and belonging to him, all his interest in the effects of the firm of Myer Jacobs, " and also all and singular the judgments and decrees, awards, bonds, bills, notes, promissory notes, bills of exchange, policies of insurance, debentures, drawbacks, bank stock, United States stock, stock of any company, copartnership or corporation whatever, books of account, evidences of debts, dues, demands and claims whatsoever and wheresoever, belonging to the said Michael Lazarus or in which he has any right, title or interest, property, lien or claim whatsoever ; " in trust to convert the same into money, and the moneys thence arising, after paying the expenses attending the execution of this trust, to apply to and towards the full payment, 1. of all bonds due from the plaintiff to the United States and of a debt to J. Thompson ; 2. of certain indorsers and creditors named ; 3. of certain other indorsers and creditors named ; 4. of certain other creditors named ; 5. of all other creditors ; and after the full payment, satisfaction and discharge of every debt due from the plaintiff, lastly, to apply the balance in the hands of the assignee, to and for the sole use and benefit of the plaintiff, or his assigns, forever freed and discharged from all further and other trusts ; provided nevertheless, that the creditors of the 2d, 3d, 4th and 5th classes, accepting of the assignment, shall, within three months from the date, if resident within the United States, or within six months, if resident elsewhere, respectively execute and deliver to the plaintiff releases and discharges of their respective claims ; and should any or either of such creditors refuse to do so, then from and after the expiration respectively of the times so limited, the share or shares under this assignment, to which such creditor or creditors, if they had accepted thereof and executed and delivered releases and discharges, would have been entitled, shall be divided ratably according to the amount and rank before stated, of their respective claims, among the creditors who shall within those times respectively, have executed and delivered releases and discharges   And it

Lazarus
v.
Common-
wealth
Ins. Co.

is further agreed, that the deed of conveyance of certain lands, by the plaintiff to Street, bearing even date with the assign-ment, and the conveyance of the steamboat Henry Schultz, are received and held by Street to and for the several uses and purposes set forth in the assignment.

The bill of sale of the steamboat was made on the same 23d of December, 1824, to Street, and she was immediately en-rolled in his name.

The creditors (excepting two or three, the amount of whose claims was so inconsiderable as not to affect the result of this case,) executed a release, on the 1st of February, 1825, of all their demands against the plaintiff.

The defendant's counsel, after the reading of the assignment, moved for a nonsuit; alleging that it disclosed such a transfer of the vessel as left no insurable interest in the plaintiff; and that all the creditors provided for in the assignment had not executed the release required, to entitle them to partake of the property, and in such case, by the tenor of the assignment, the surplus, if any, after paying the debts of those who did release, did not revert to the plaintiff; but these objections were over-ruled, the plaintiff's counsel proposing to show that there was a surplus of the assigned property reverting to the plaintiff after paying all the debts which were released by the creditors, and the points were reserved.

At the November term 1834, on the motion of the defend-ants, the action was by an order of court referred to auditors. The parties agreed upon Benjamin R. Nichols and Ozias Goodwin. It being inconvenient for Goodwin to attend to the business at the time, it was agreed that Nichols might proceed without him. Nichols understood the agreement to be, that he was to go on and examine the accounts, and make his report; but that if either party desired it to be done, Goodwin was to be called in and to examine the accounts, vouchers, evidence, &c. with Nichols. But the defendants alleged that they understood the agreement to be, that Nichols was only to proceed so far as to examine the accounts suffi-ciently to form an opinion as to the best mode of proceeding, and that Goodwin was to be called in to state the account with him. Nichols, according to his understanding of the agree-

ment, prepared and delivered a report to the respective coun-sel of the parties, in March 1835. The defendants' counsel being dissatisfied with the proceeding and report, it was agreed that a second examination of the accounts should be made by Nichols and Goodwin together. They accordingly, after a hearing on both sides, made their report in March 1836.

The plaintiff offered in evidence the two reports of the auditors, but the defendants objected to the reading of the first, on the ground that it was made without any hearing on the part of the defendants, and that the auditor had the assistance of the clerk of the plaintiff's counsel, in the absence and without the knowledge of the defendants.

The plaintiff then omitted the first report and offered the second ; which the defendants objected to, on the ground, that after Nichols had made the first report and before the second examination, he had gone to Charleston, the residence of the plaintiff and of Street, and there examined the books of Street in relation to the subject of the audit, without the knowledge of the defendants and without having informed them of the fact until the day of the trial ; and the defendants then proceeded to examine Nichols in relation to the several objections to the reports being read in evidence.

Whereupon Nichols testified, that he gave notice to the parties to appear before him to proceed on the hearing of the case, and that they appeared with their counsel, and that it was then mutually agreed by the parties, as he understood, that he should himself proceed in the examination of the books and accounts without summoning the parties again before him, and inform them of the result, with liberty, on his own part, to call in Goodwin if he saw fit ; and for this purpose the books, papers and depositions were put into his hands and were diligently examined by him ; that during the time he was taken ill and confined to his house, where (the parties being, as he understood, desirous of an early report) he had the books and accounts brought to him ; that in consequence of his illness he needed the help of some one to turn over the books for him and bring them to him, they being numerous and heavy, and for this purpose he employed occasionally the clerk of one of the plaintiff's counsel, who was familiar with the books and

8

readily turned to such accounts as he wished to examine, but that the only assistance rendered him by the clerk was to hand the books to him and to turn to different accounts and entries, and that the opinions he formed, in every case, were the conclusions of his own mind from his own examination, and without any bias or influence from the clerk or any other person ; that on the completion of his report, he handed it to the defendants' counsel, who had opportunity to examine it and who, before he, Nichols, left Boston for the south, paid him one half of his charge for auditing the accounts ; and he further testified, that there were a number of items which stood charged in the books of the plaintiff and which the auditor set forth in his report specifically, which did not appear by the books to have been collected in cash ; but that these credits, though not appearing in the books, were shown in the accounts current between T. & T. Street & Co. and the estate of the plaintiff, and the account of Saul Alley with the same estate, which were exhibited to the auditor ; that having gone to Charleston for the benefit of his health, he called at the counting-room of Thaddeus Street (Timothy Street, the partner of Thaddeus, being then dead), and for his own satisfaction looked at their books, to ascertain whether those items had been realized in cash, and satisfied himself in this respect ; that some time after his return, the books of the plaintiff and the papers and depositions being still in his possession, he was again asked by the defendants to proceed to a second examination of the accounts in company with Goodwin, and to let them, the defendants, have the books and papers and depositions, in order to make further preparation before meeting the auditors ; that when the defendants had examined them to their satisfaction during a space of from four to six months, the parties came before himself and Goodwin and presented their views in full, and the defendants particularly requested the auditors to pursue a different course from that adopted in the former examination ; which request the auditors complied with in all particulars and pursued their examination wholly independently of the former examination ; and after a full hearing of the parties and a careful investigation of the whole matter, they made the second report and gave a copy to each party. Nichols stated

further, that he did not make known to the defendants, nor to their counsel, the fact that he had examined the books in Charleston, until he mentioned it to the counsel on the first day of the trial, deeming it wholly unimportant ; and he also stated, that the accounts he examined there were afterwards confirmed by the testimony of Thaddeus Street used on the hearing before the auditors, and that the second report was founded on the evidence brought before them.

After the examination of Nichols was finished, the judge overruled the objection to reading the second report, the plaintiff having, as before stated, omitted the first on his suggestion, but without any decision upon its admissibility.

The plaintiff then proceeded to read the second report to the jury, and also a part of the depositions taken on his behalf.

It appeared by some of the depositions read, that on the 24th of January, 1832, those creditors who had released the plaintiff, but had not been paid their demands, entered into an agreement with Timothy Street as follows : — " Whereas it has been agreed upon by the creditors to the assignment of Mr. Michael Lazarus, to give him a full and complete discharge on receiving one fourth of their respective claims in cash and the whole of the remaining assets as set forth under the assignment and now subject to their several claims, to be divided among them as they should deem expedient ; and whereas it is desired and requested on the part of the creditors thus granting and extending the full and unequivocal discharge to said Mr. Michael Lazarus, that Mr. Timothy Street should act as their agent or trustee in collecting, receiving and realizing the remaining assets now paid over to them in full satisfaction of their several balances of three fourths of their demands : — This is to certify and set forth, that I will undertake the trust in their behalf, of collecting, receiving and realizing the said remaining assets now deposited with me and placed in my charge, for their entire use and benefit until all are paid, and give the same my best attention, and that whenever and as often as I collect or receive sufficient to divide ten per cent., such dividend will be made by me to the several creditors thus entitled, according to and in *pro ratâ* of their several amounts of interest therein." Then follows a memorandum of assets,

amounting to $ 14,329·96, (besides Florida lands,) " to pay the several balances due, of three fourths as stated, $ 9978·10."

The plaintiff's counsel having concluded their opening, the defendants' counsel, after stating their case and still denying the admissibility of the second report of the auditors, introduced the first report, alleging that it was necessary to explain the second.

It appeared by the second report, that the auditors had computed as a part of the assets under the assignment, the sum of $ 11,000 received from an insurance company in New York upon a policy on the same steamboat and for the same loss, half the agreed value of the boat having been insured in each policy. The defendants' counsel objected that this sum ought not to be included, inasmuch as according to the ruling of the judge in this case the policy had not been effectually assigned to Street, and no other assignment of the New York policy was shown to have been made except what arose from the general indenture of assignment ; but it not appearing that there was any condition in the New York policy that it should be void on any assignment of it, nor to whom it was payable in case of loss, the judge overruled the objection ; to which the defendants excepted.

The defendants' counsel moved the judge to instruct the jury ; —

1. That the plaintiff having assigned the policy, the same was void by the terms of it. But on raising this objection the plaintiff introduced the depositions of Stewardson and one Davis, and referred to the deposition of Street. Stewardson testifies, that he never had, either in his individual capacity or as one of the firm of Smith & Stewardson, any interest in the policy in suit ; that Smith & Stewardson were creditors of the plaintiff, at the time of the general assignment of his property to Street, for a balance of account amounting to about $ 13,000 ; that this claim has been paid in full, chiefly by shipments made by the plaintiff prior to his failure, and the balance, about $ 4000, by money received from Street in May 1825 ; that after the assignment, and before the loss of the steamboat, he had conversations with the defendants' agent at Philadelphia, with regard to the effect of the assignment on the policy ; that the agent said the policy could not be affected in any manner,

Lazarus
*v.*
Commonwealth
Ins. Co.

in consequence of the assignment ; that the deponent still feeling uneasy lest, in case of loss, objections should be raised on account of the assignment, requested the agent to make a memorandum on the policy, that it should not be affected by the assignment, but that the agent objected to doing so, saying, at the same time, that it would be useless ; and that the policy always remained in the possession of Smith & Stewardson, after it was delivered to them by the agent of the defendants, and was never assigned, transferred or pledged by Smith & Stewardson to any person, and was in their possession at the time of the loss. Davis deposes, that the defendants' agent told one of the firm of Smith & Stewardson, that it was necessary, in order to make the policy binding, that the transfer of the property should be sanctioned by the defendants. Street deposes, that he received no policy of insurance under the assignment, and that although policies of insurance are named in it, the policies on the Henry Schultz never were in his possession ; but that he always considered that, when collected, the proceeds would be applied to the payment of the plaintiff's debts, and that if not collected, the loss would fall on the plaintiff.

2. That the assignment of the vessel before the loss, left no insurable interest in the plaintiff.

3. That if the plaintiff had any insurable interest in the vessel, it was only such a proportion of her agreed value as the surplus, if any, of the assigned effects remaining after paying the debts of the releasing creditors, bore to the whole value of the assigned property, and that the jury should return their verdict according to the amount of such surplus, if any, and should be instructed to find specially the amount of such surplus.

4. That the reports of the auditors were not evidence of the facts or inferences therein stated as derived from the evidence in the case, but only of the result of the accounts, if such facts were otherwise proved to exist.

5. That by the agreement of January 31st, 1832, the plaintiff abandoned all claim to the whole property, including the steamboat, and showed that he had no insurable interest.

But the judge instructed the jury, that if they found there was a surplus of property after paying those creditors who had

Lazarus
v.
Common-
wealth
Ins. Co.

released the plaintiff, and without including any amount due on this policy, then they should find a verdict for the plaintiff for the whole sum insured ; and that the agreement of January 31st, 1832, on the face of which the plaintiff did not appear to be a party to it, did not of itself take away the plaintiff's insurable interest, and being made after the loss, did not affect the plaintiff's right to recover ; but that if the jury found that there was not a surplus of property without the amount insured in this policy, deducting the salvage, but that including such amount there was a surplus, they should find a verdict for the plaintiff for such surplus only.

The judge also instructed the jury, that the report of the auditors was, under the direction of the Court, to be given in evidence to the jury, and that the same was, without the introduction of the evidence on which it was founded, *primâ facie* evidence of a surplus in the hands of the assignee after paying the debts of the releasing creditors ; that it was competent for the defendants to impeach the report by other evidence ; and the jury were instructed to take into their consideration all the evidence produced by the defendants, including the books of the plaintiff produced at the request of the defendants, and by them given in evidence, and also the testimony of Nichols, and to find their verdict according to the result of such evidence, taken in connexion with the reports. The judge further stated to the jury, that the plaintiff's assignment was broad enough in its terms to cover all the property, including choses in action, which he held at the time of the assignment.

To the above instructions the defendants excepted.

The jury found a verdict for the whole sum insured, deducting the salvage.

*March 22d.* *Fletcher* and *F. Dexter*, for the defendants, cited as to insurable interest, *Lucena* v. *Crauford*, 3 Bos. & Pul. 75, and 5 Bos. & Pul. 269.

*J. Mason* and *S. Hubbard*, for the plaintiff, cited to the point, that this policy did not pass by the general assignment, *Moody* v. *Webster*, 3 Pick. 424 ; *Godin* v. *London Ass. Co.* 1 Burr. 489 ; that the plaintiff had an insurable interest notwithstanding the assignment, 3 Kent's Comm. (3d ed.) 275 *et seq.* ; *Reed* v. *Cole*, 3 Burr. 1512 ; *Smith* v. *Lascelles*, 2 T

R. 188 ; *Hill* v. *Secretan*, 1 Bos. & Pul. 315 ; *Carruthers* v. *Sheddon*, 6 Taunt. 14 ; *Columbian Ins Co.* v. *Lawrence*, 2 Peters, 46 ; *Locke* v. *N. American Ins. Co.* 13 Mass. R. 61 ; *Gordon* v. *Mass. F. & M. Ins. Co.* 2 Pick. 249 ; *Strong* v. *Manufacturers Ins. Co.* 10 Pick. 40 ; and that an auditor's report is *primâ facie* evidence of the facts contained in it, *Lyman* v. *Warren*, 12 Mass. R. 412 ; *Pierce* v. *Thompson*, 6 Pick. 193 ; *Allen* v. *Hawks*, 11 Pick. 359.

<em>Lazarus<br>v.<br>Common-<br>wealth<br>Ins. Co.</em>

PUTNAM J. delivered the opinion of the Court. This action was tried many years ago, and the verdict for the plaintiff was set aside and a new trial granted at March term 1827, as the report in 5 Pick. 76 states, because the verdict was given "without evidence of a probable surplus after paying the debts for which the property was assigned." The cause was tried a second time at the last November term, when a verdict was again returned for the plaintiff for the whole amount of the loss claimed by the plaintiff, deducting the salvage which he had received.

*April 3d*

The cause has now been very ably argued by the counsel on both sides, on the motion for a new trial in behalf of the defendants, on various grounds, which will now be considered.

1. They contend that the plaintiff had, by his assignment to Street, made the policy void.

Such a result could not have been intended ; for the effects and choses in action were assigned upon the express trust to be appropriated to the payment of the debts of the assignor, the surplus, if any, to be paid to himself. It would be absurd for a man to tear off the seal or cancel the bond or policy, at the same time that he assigned the instrument with the intent of having the money due upon it collected for his own benefit. All deeds and other instruments and agreements are to be construed according to the legal intent of the parties ; and a construction which necessarily involves great folly and absurdity will not be favored.

We propose to consider this point, upon the ground on which the defendants place it, viz. that if the plaintiff assigned the policy without the written consent of the assurers, it would make the policy void. Be it so, for the purpose of this argument. An assignment of it would be as destructive to the policy

as the burning it up would be.    Then it would seem to follow, that the policy never had any effectual assignable quality.    We say effectual, because, although the form of words which constitute a valid assignment should be written upon the policy, no benefit would arise to the assignee, upon the ground taken by the defendants.    The act of sealing the assignment would be considered as an act of cancelling the policy.    So it was in truth a policy which was not assignable.

But the plaintiff cannot be supposed to have intended to destroy the policy.    He could have no motive to do so, and he had every motive of interest to preserve it.    If it was included in the description of "all policies," it was with the express intent that the money which should become due upon it, should be collected and paid or appropriated for his benefit.    But as upon the defendants' hypothesis that effect cannot take place, then it follows, that if it is to be considered as being contained in the assignment, the policy thereby became utterly void, and the plaintiff cannot recover.    On the other hand, if it is not contained in the assignment, then this objection is invalid.

It is a familiar rule, that the generality of the words employed in agreements should be restrained, if that should become necessary to ascertain and carry into effect the legal intent of the parties.    Now there are other reasons than those which are before suggested, tending to satisfy us that this policy was not included in the assignment.    At the time when it was made, the policy was in the hands of Smith & Stewardson, who were then in advance to the plaintiff.    They procured it to be made, and the defendants agreed to pay the money to them in case of loss.    They might have maintained an action upon this policy in their own names against the defendants. Now it would seem that the plaintiff could not have deprived them of the benefits secured to them by this contract, without their consent.    It is true that the plaintiff afterwards paid his debt to them ; but that circumstance does not show that the defendants might not have been liable to them for any loss upon this policy which might have happened after the assignment and before they received their payment from the plaintiff.    If the policy was made void, it was avoided by the act of assignment ; and if it were so avoided, it would follow that Smith & Stew-

ardson's rights, which were secured by the policy, would have been destroyed, without their consent.

It was held in the time of Edward 3d, that a grant by one of *omnia bona sua*, should pass not only goods which he had in his own right, but those which he had as executor or administrator, because in some sense those were his goods. But the law is held otherwise now, unless the party granting had no goods but as executor or administrator, and if that were the case, then *ut res magis valeat,* &c. the goods which he had as executor or administrator would pass. *Hutchinson* v. *Savage,* 2 Ld. Raym. 1307.

A release of all errors, actions, suits, and writs of error whatsoever, will not discharge an action of debt upon a bond, and yet the release is, among other things, of *all actions.* So in a writ of annuity, it was pleaded, that the plaintiff released the defendant from payment for half a year, and released to him all actions, suits and demands. And it was held, that the release did not bar the plaintiff but of the arrearages of a year. *Abree's case,* Hetley, 15. In the above cases the generality of the words were restrained by the obvious intent. It would be easy to give a page of citations which sustain this general position. We will cite only one more. An obligor by bond agreed, when and so soon as he should become possessed of, or entitled to, any commission, post, place, salary, pension or pay whatsoever, that then he would immediately execute a proper assignment thereof to the plaintiff. It was argued for the obligor, that the condition was void, inasmuch as it extended to all offices ; and that some offices were not by law assignable. But it was held by Lord *Mansfield,* that the bond was good as to all offices which were assignable, but void as to those which were not.

So here, the plaintiff had a policy which was not assignable, and he had one or more policies which were assignable, and he assigns all his policies. It seems to us, that such policies only as the plaintiff could legally and effectually assign, were intended to be included in the conveyance.

We are of opinion that this objection cannot prevail.

The loss of the steamboat by a peril insured against, happened on the 22d of April, 1825, within the time covered by

Lazarus
*v.*
Common-
wealth
Ins. Co.

the policy. The transfer of the boat by the plaintiff to Timo thy Street on the 23d of December preceding, and the assignment of the plaintiff's property, including the boat, to Street, which was on the same day, were admitted. And the defendants contend, 2dly, that the assignment of the vessel before the loss left no insurable interest in the plaintiff, at the time when the loss happened.

This steamboat and all the other property of the plaintiff were assigned to Street in trust to pay the expenses of the administration of the fund, and then to pay the plaintiff's creditors as set forth in the assignment, and in the last place, to pay the balance then remaining in the hands of Street, the trustee, for the sole use and benefit of the plaintiff, his executors, administrators or assigns forever, freed and discharged from all further and other trusts. Now the jury have found that there was a surplus of property after paying the creditors who had released the plaintiff, without resorting to any amount due upon this policy.

The evidence upon which the verdict was found, will be a subject hereafter to be considered. But assuming it to be correct, we proceed to consider the objection of the defendants on the ground of a want of insurable interest.

And it seems to us to be perfectly clear, that the transaction amounts to a pledging or mortgaging of the plaintiff's property, giving the pledgee or mortgagee a power to sell and dispose of the same, he being to account for the proceeds to the pledgor or mortgagor. Now the plaintiff had certainly a contingent interest in this vessel. If the trustee should be able, from the trust fund, to pay all the claims under the assignment, and so should have relieved this vessel, if she had not been lost, from the pledge or mortgage, then it would seem to be very clear, that the plaintiff would have been entitled to have the vessel returned, or the proceeds of it paid to him if it had been sold by the trustee. And the same reasoning applies to the plaintiff's claim against the defendants for the loss under the policy. To whom does it belong? Not to the creditors, for they have been paid without any recourse to this property ; and besides, it was not assigned to them or to Mr. Street for their use. It seems to us, that it belongs to the plaintiff. If he should

recover, he will have the money for his own use ; if not, he must alone sustain the loss.

Now it is perfectly clear to us, that the plaintiff had an interest to the extent of the whole amount insured. He wanted to make a provision for the payment of his debts. His property consisted in a great measure of ships and merchandise, exposed to marine perils. If they arrived in safety, they would be appropriated for the general object ; if they should be lost, the loss would fall upon the plaintiff, unless he secured himself by getting insurance against the perils to which they were exposed.

The cases cited by the plaintiff are conclusive to show that the mortgagor has an insurable interest. We refer especially to *Smith* v. *Lascelles*, 2 T. R. 188 ; *Locke* v. *N. American Ins. Co.* 13 Mass. R. 61 ; *Gordon* v. *Mass. F. & M. Ins. Co.* 2 Pick. 258.

The plaintiff's title to the steamboat was good against all the world excepting the assignee. It was transferred to him upon a condition, which has been performed, so that the title of the assignee has been divested. Now it is perfectly clear that a *cestui que trust* has an insurable interest, as well as the trustee. It is not contended but that the plaintiff had an insurable interest at the time when the policy was effected. It is certain that he has not divested himself of his interest absolutely, but only conditionally ; and that this property has been relieved from the assignment by the performance of the condition. If the steamboat had not been lost, but should now arrive in good safety, the law would give the plaintiff ample means to obtain and hold the vessel. The defendants would keep their premium, and nobody could maintain that the plaintiff should not have his boat. So if she had not been lost, but had gone into the hands of the assignee and been sold and the proceeds distributed according to the assignment, the defendants would have held their premium, and the plaintiff would have had the benefit of the vessel, in the increased amount of the surplus remaining, after the payment of the debts. But the policy now represents the vessel. The defendants are just as liable to pay the money for the loss, as Street, the trustee, would be to account to the plaintiff for the vessel if she had arrived and had remained specifically after the creditors were paid.

But it has been further contended, 3dly, for the defendants, that if the plaintiff had any insurable interest in the vessel, it was only such a proportion of her agreed value as the surplus, if any, of the assigned effects, remaining after paying the debts of the releasing creditors, bore to the whole value of the assigned property. For example, suppose the whole assets to amount to $ 115,000, the insurance to be for $ 10,000, the debts to amount to $ 100,000. The plaintiff's claim would be cut down to about $ 1300. It should be remembered, that none of the transactions under the assignment have the slightest bearing upon the risks which the defendants have assumed by their policy. We know of no rule of law which calls for the establishment of such an apportionment of the plaintiff's interest, and it seems to us that such a rule would be as inequitable as it would be novel.

But the defendants contend, 4thly, that the reports of the auditors ought not to have been received, the first, because it was made *ex parte* by one of the auditors, and the second, because Mr. Nichols, one of the auditors, examined the books of Street in Charleston without the knowledge of the defendants.

Now we all think, that the objections which were made against the reports, are without any reasonable foundation. We are satisfied that Mr. Nichols conducted himself with perfect propriety and fidelity. The parties waived the right to be present with him while he examined the books and made the first report. His examination of Street's books in Charleston came fairly within the scope of his original authority. The examination might possibly have led to some result unfavorable to the plaintiff, but not to the defendants. But we are satisfied that the result operating one way or the other made no difference in Mr. Nichols's conduct. It was suggested that Mr. Nichols had made his mind up, before he heard the parties and made the second report with Mr. Goodwin. But it seems to us, that he had made up no opinion which was not well vouched by books and documents. He could not make himself believe that two and two made only three; and that seems to be the extent of his prejudging. We have examined the reports. They contain the administration of a trust exceeding two hundred thousand dollars, involving an immense number

and variety of concerns. The result of the first examination was communicated to the defendants. They had ample time and means to disprove it. They were heard before both auditors on the second examination, which proceeded in a different course from that which Mr. Nichols took in the first ; and the difference between the first and second examination amounted to $12·96.

It should be remarked, that the reports do not deal in generalities. If they are wrong, they refer to the books and documents with great particularity, to the end that the errors might be corrected. Besides, if Mr. Nichols had any bias, the defendants should not have submitted to the second hearing, but another auditor should have been appointed. But they took their chance and cannot now complain. *Fox* v. *Hazleton*, 10 Pick. 275. These reports, we think, were properly admitted on the trial.

But it is contended for the defendants, that the judge should have instructed the jury, that the reports of the auditors were not evidence of the facts or inferences therein stated as derived from the evidence in the case, but only of the result of the accounts, if such facts were otherwise proved to exist. But the judge ruled otherwise, and instructed the jury that the reports were, without the introduction of the evidence on which they were founded, *primâ facie* evidence of a surplus in the hands of the assignee, after paying the debts of the releasing creditors, and that it was competent for the defendants to impeach the reports by other evidence. And the jury were directed to take into their consideration all the evidence produced by the defendants, including the books of the plaintiff produced at the request of the defendants, and by them given in evidence, and also the statement of Mr. Nichols ; and to find their verdict according to the result of such evidence, taken in connexion with the reports. Now we all think that this ruling was perfectly correct ; and that it does not require any argument or illustration either in support or explanation of it.

It was also contended, 5thly, for the defendants, that by the agreement of the 31st of January, 1832, the plaintiff abandoned all claim to the whole property, including the vessel in question, and that thereby it is proved that he had no insurable

Lazarus
*v*
Common-
wealth
Ins. Co.

interest.   The creditors recite that they had agreed to give the plaintiff a discharge upon receiving the whole of the remaining assets *as set forth in the assignment.*   Be it so.   How was it set forth in the assignment ?   Why, all the effects were transferred, but there was a resulting trust therein contained for the plaintiff, and the trustee, Street, did not understand the agreement as the defendants' counsel now insist that it should be construed.   He undertook with these creditors to administer the trust fund until all the creditors were paid.   He would be accountable for the surplus under the resulting trust of the original assignment, to which this agreement expressly referred. Street's words are, "I will undertake the trust in their behalf, of collecting, receiving and realizing the said remaining assets now deposited with me, and placed in my charge, for their entire use and benefit *until all are paid.*"   But he goes no further.   If any thing remained after they were all paid, it would clearly fall into the resulting trust contained in the assignment, and Street would thereby be held accountable to the plaintiff for the same accordingly.

Independently of this reasoning, the plaintiff was not a party to this agreement.   It was made between the creditors and Street long after this action was brought.

We are satisfied that this agreement cannot be construed so as to divest the plaintiff of any surplus funds, or to affect his right to recover upon this policy.

We have now examined and considered all the objections which have been argued for the defendants, and are all very clearly of opinion that the plaintiff is entitled to judgment according to the verdict.